Nov. Term, 1852.

GASTON
v.
BOARD OF
COMMISSION-
ERS OF MARION
COUNTY.

## GASTON v. THE BOARD OF COMMISSIONERS OF MARION COUNTY.

A *post mortem* examination made by a physician at the request of the coroner is not a service covered by the physician's employment to attend upon the county poor.

A physician is not entitled to any greater compensation for traveling to and giving evidence at a coroner's inquest, in obedience to a subpœna, than any other witness.

The expenditure of labor and skill by the physician in a *post mortem* examination will, however, entitle him to additional compensation.

The coroner may, where a *post mortem* examination is necessary, employ a physician to make the examination and the county will be liable for the expense.

The board of commissioners of a county have jurisdiction of the claim of a physician for services rendered in a *post mortem* examination made at the request of the coroner, and the judgment rendered by the board on

Nov. Term,
1852.

GASTON
v.
BOARD OF
COMMISSION-
ERS OF MARION
COUNTY.

Friday,
November 26.

the claim, if brought before them according to the statute, is, while un-
reversed, conclusive.

To give the board jurisdiction of the claim, it is not necessary that it
should be brought before them like a formal suit at law.

ERROR to the *Marion* Circuit Court.

PERKINS, J.—Dr. *Gaston* sued the commissioners of *Ma-
rion* county for services rendered in a *post mortem* exami-
nation of the body of a deceased person, which examina-
tion was made upon the call of the coroner of the county.
Judgment for the defendant in the Circuit Court.

The case was submitted and decided upon the follow-
ing agreement as to the facts:

"It is agreed that an inquest was held over the body of
*James Smither* on the 14th of *March*, 1849, in the county of
*Marion*, by *Peter Newland*, as the coroner of said county;
and that he is the coroner of said county; that for the
purpose of enabling the jury to determine by what means
the said *James Smither* (who it was supposed came to his
death by poisoning) came to his death, it was necessary
to have a *post mortem* examination of the body of said
*Smither*, who had been dead and buried eight days; that
the plaintiff was subpœnaed by said coroner for that pur-
pose, and, failing to attend upon said subpœna, an attach-
ment was issued for said plaintiff, who was accordingly
attached and brought thereunder to *Pike* township, in said
county, where said inquest was held; and there, under
the direction of said coroner, made, with the assistance
of others, the *post mortem* examination of said *James
Smither*, deceased, and was there sworn as a witness in
the case, and testified to said jury as a witness, and com-
municated to them the result of that examination, and
his opinion of the means by which said *Smither* came to
his death;" that the examination was fourteen miles from
the residence and office of said *Gaston*, and occupied the
space of two hours; that said *Gaston* had, previously to
commencing this suit, filed his claim for compensation
with the county commissioners who had rejected it, and
no appeal had been taken; that at the time said *Gaston*

Nov. Term,
1852.

GASTON
v.
BOARD OF
COMMISSION-
ERS OF MARION
COUNTY.

made said examination he was one of the physicians employed by the county, at a given salary, to attend upon all county paupers; that if he is entitled to recover at all in this case, the judgment shall be for 25 dollars.

This agreement is signed by *Ketcham* and *Taylor* for the plaintiff, and *R. L. Walpole* for the defendants.

The service rendered in this case by Dr. *Gaston* was not covered by his employment to attend upon the county poor. ❙He was entitled to no compensation for that service so far as the traveling and giving testimony in obedience to the subpœna were concerned, beyond that of an ordinary witness. Physicians are not specially privileged in this particular. But the expenditure of labor and skill in the *post mortem* examination created a claim to additional compensation from some source. Either the coroner who procured the service, or the county, should pay for it.

We have no doubt that in a case where a *post mortem* examination is really necessary the coroner may, by his employment, bind the county to the payment for a sufficiency of professional skill to make the examination. To that extent, at least, he must be the agent of the county (1).

But whether the employment of the plaintiff in the present case was such as to entitle him to compensation from the county or not, we have not to determine. The agreement upon which the cause was submitted states that said plaintiff had, before the commencement of this suit, presented his claim for his service in said *post mortem* examination, in company with the claims of two other physicians, to the board of commissioners of *Marion* county, before whom it was docketed, heard, and decided against said plaintiff, all of which appears of record, and that no appeal had been taken from that decision.

That judgment of the commissioners bars this suit. The commissioners were a Court having jurisdiction of the cause; it was brought before them in the manner pointed out by the statute, and their judgment, while unreversed, is conclusive. See the case of *The State* v. *Conner*, 5 Blackf. 325. It is not material that the claim was

not brought before said commissioners in the manner of a formal suit at law. It was not necessary to give the commissioners jurisdiction that it should be so brought. See *Hart* v. *The Board of Commissioners of Vigo county*, 1 Carter's Ind. R. 309. And section 23, R. S. p. 184.

*Per Curiam.*—The judgment is affirmed, with costs.

*J. L. Ketcham* and *N. B. Taylor*, for the plaintiff.

*R. L. Walpole*, for the defendants.

(1) See *Alleghany County* v. *Watt*, 3 Penn. State R. 462.